BANK OF AMERICA, NATIONAL TRUST & SAVINGS ASSOCIATION, a National Bank, Petitioner,

v.

Manuel A. CHACO, Director of Revenue & Taxation, Government of Guam, (Successor to Joaquin G. Blaz), Respondent.

Civ. No. 169–72.

District Court of Guam.

Oct. 28, 1976.

Walter S. Ferenz, Barrett, Ferenz, Bramhall & Williams, Agana, Guam, for petitioner.

Sidney Manster, Asst. Atty. Gen., of Guam, Agana, Guam, for respondent.

## OPINION

DUENAS, District Judge.

On June 6, 1972, Joaquin G. Blaz, Director of Revenue and Taxation of the Government of Guam, hereinafter referred to as "Director", caused to be mailed to Petitioner Bank of America, National Trust & Savings Association, a notice of income tax deficiency in the amount of $537,375.36 for the taxable years ending December 31, 1965, 1966, 1967, and 1968.

Petitioner, in a timely manner, filed the petition at issue for redetermination pursuant to Sec. 1421i(h)(2), Title 48, U.S.C., and Sec. 19700 of the Government Code of Guam.

The parties have narrowed their dispute down to two items of contention. Item No. 1: Should petitioner be allowed to take as a deduction in tax years 1965 and 1966 certain expenses which respondent contends are connected with stateside produced income which is taxed by the United States and not taxed by Guam. Item No. 2: Pursuant to the Foreign Investors Tax Act of 1964, 26 U.S.C., Sec. 864(c)(4), is petitioner required to pay income tax to the Government of Guam on income from sources outside of Guam, and inside the United States, which is attributable to petitioner's operation in Guam.

Petitioner is a national bank which has its main business location in San Francisco, California, and is doing business in the Territory of Guam through various branches.

The Director contends that he is seeking to tax income derived by petitioner from the investment of the excess of its deposits in Guam over the sum of all kinds of loans it makes on Guam. The Director measures this investment income resulting from excess deposits in a rather complicated manner.

The Government of Guam maintained large deposits with the petitioner during the years 1965, 1966, 1967, and 1968. Section 6313 of the Government Code of Guam requires banks holding such government deposits to place with, or to the accounts of, the Government of Guam, as security for such deposits securities of a certain type, i. e., Treasury notes or bonds of the United States, or those for which the faith and credit of the United States are pledged for the payment of principal and interest, in an amount in value at least ten percent (10%) in excess of the amount of moneys deposited with the bank.

It is the interest income on these bonds and Treasury notes of the United States that the Director claims is taxable by the Government of Guam.

The Director and Petitioner have stipulated to a method of approximating the interest income on these government obligations for the years in question. The following figures represent this interest income as stipulated:

| 1965 | — | $399,889.00 |
| 1966 | — | 358,117.00 |
| 1967 | — | 312,816.42 |
| 1968 | — | 337,375.44 |

By disallowing deductions in 1965 and 1966 in the amounts of $124,355.31 and $118,246.56, respectively, and by including the before mentioned income in 1967 and 1968, the Director assessed a deficiency against Petitioner.

The Director admits that the interest income derived in 1965 and 1966 is not taxable by the Government of Guam because the Foreign Investors Tax Act of 1966, Public Law 89–809, 80 Stat. 1539, hereinafter referred to as "F.I.T.A.", does not apply to taxable years beginning before December 31, 1966. However, the Director contends that F.I.T.A. does apply to Guam and to petitioner in tax years 1967 and 1968.

It is undisputed that Petitioner's home office in San Francisco administers the investments with respect to government deposits and general public funds as to all branches. The only duty petitioner's Guam office has with regard to these investments is to notify the home office as to the amount of the government deposits in Guam.

Section 864(c)(4) of Title 26 of the United States Code provides:

(4) *Income from sources without United States.—*

(A) Except as provided in subparagraphs (B) and (C), no income, gain, or loss from sources without the United States shall be treated as effectively connected with the conduct of a trade or business within the United States.

(B) income, gain, or loss from sources without the United States shall be treated as effectively connected with the conduct of a trade or business within the United States by a nonresident alien individual or a foreign corporation if such person has an office or other fixed place of business within the United States to which such income, gain, or loss is attributable and such income, gain or loss—

(i) . . .

(ii) consists of dividends or interest, or gain or loss from the sale or exchange of stock or notes, bonds, or other evidences of indebtedness, and either is derived in the active conduct of a banking, financing, or similar business within the United States or is received by a corporation the principal business of which is trading in stocks or securities for its own account; or

. . ."

Pursuant to 48 U.S.C., Sec. 1421i(e), the Director has substituted "Guam" for "United States" in Sec. 864(c)(4)(B) and Sec.

864(c)(4)(B)(ii) of Title 26 of the United States Code. It is the contention of the Director that a foreign corporation doing business in Guam, i. e., a corporation incorporated elsewhere in the United States but doing business in Guam, is subject to F.I.T.A. in the same matter as a German company incorporated in Germany but maintaining an office in the United States. In other words, income earned by Petitioner Bank of America in the United States which is effectively connected with the conduct of petitioner's business in Guam is subject to the Guam Territorial income tax instead of the United States income tax.

However, 48 U.S.C., Sec. 1421i(e) provides that the term "Guam" shall be substituted for "United States" unless manifestly otherwise required. Moreover, 48 U.S.C., Sec. 1421i(d)(1) provides:

"(d)(1) The income-tax laws in force in Guam pursuant to subsection (a) of this section include but are not limited to the following provisions of the Internal Revenue Code of 1954, where not manifestly inapplicable or incompatible with the intent of this section: Subtitle A (not including chapter 2 and section 931); chapters 24 and 25 of subtitle C, with reference to the collection of income tax at source on wages; and all provisions of subtitle F which apply to the income tax, including provisions as to crimes, other offenses, and forfeitures contained in chapter 75. . . . ."

The Court is of the opinion that it is manifestly required that "Guam" not be substituted for "United States" in F.I.T.A. in this instance, and that F.I.T.A. is not applicable to corporations incorporated in the United States but outside of Guam that are doing business in Guam.

### F.I.T.A. DOES NOT APPLY TO PETITIONER

The following passage from Senate Report No. 1707, as set forth in the U.S. Code Congressional and Administrative News, 89th Congress, Second Session 1966, pp. 4446, 4462, is relevant to the Court's decision:

"b. *Income effectively connected with the conduct of a trade or business in the United States (sec. 102(d) of the bill and sec. 864(c) of the code)*

*Present law.*—Under present law nonresident aliens and foreign corporations are generally taxable at the regular individual or corporate rates on all their U.S. source income if they are engaged in trade or business in the United States and are taxable at a flat 30-percent rate (or lower treaty rate) on all fixed or determinable income if not so engaged. This difference in treatment applies whether or not there is any relationship between the different types of incomes (business and investment) from the United States.

*Reasons for provisions.*—Under the rule described above, one foreigner may be taxed on investment income at the regular individual or corporate rates while another, with an identical portfolio investment, is taxed on his investment income at the flat 30-percent (or lower treaty) rate. The difference in treatment arises from the fact that one is engaged in business in the United States and the other is not, even though the investment portfolio of the former is wholly unrelated to his U.S. business. Your committee agrees with the House that it is neither equitable nor logical for this substantial difference in tax treatment of investment income to depend on the presence or absence of an unrelated business. In addition, the Presidential Task Force on Promoting Increased Foreign Investment in U.S. Corporate Securities has pointed out that the present scheme deters foreign businessmen operating in the United States from investing in the United States, and also deters foreigners already investing in the United States from commencing a trade or business here.

The present scheme for taxing foreigners engaged in business in the United States also is defective in another respect. The interplay between the tax rules of certain foreign countries and the United States has in some cases permitted the

use of the United States as a tax haven. The tax avoidance in such a case can be illustrated by a foreign corporation which is organized in a country which does not tax its domestic corporations on income derived from the conduct of a business outside the country. If such a corporation desires to sell products into countries, other than the United States or the country of its incorporation, it can, in many instances, avoid all or most taxation on the income from these sales by establishing a sales office in the United States. The income from the sales in such cases is not taxed by the United States because (under the title passage rule) it is not derived from sources within the United States. The income may not be taxed by countries where the products are sold because the corporation does not have a permanent establishment there, and the income is not taxed by the country of incorporation because the business is not conducted there. Moreover, a similar tax avoidance scheme can be utilized with respect to sales arranged in the United States concerning goods destined for use in this country. In addition, U.S. tax may be avoided in the case of rents and royalties from a licensing business and income from banking, financing or investment company businesses carried on in the United States. Your committee agrees with the House that foreign corporations carrying on substantial activities in the United States, in such cases, should not be able to cast their transactions in such a form as to avoid both all U.S. tax and most foreign taxes. Also, it is believed that foreign corporations should pay a U.S. tax on the income generated from U.S. business activities. There appears to be no national policy to be served by allowing foreign persons to operate in this country without paying their share of our governmental expenses." (P. 4462–4463).

▮ The legislative purpose behind F.I.T.A. was two-fold: One, to provide equality in the taxation of income derived by foreign corporations doing business in the United States; and two, to prevent foreign corporations from using the United States as a tax haven and avoid paying income tax altogether on large amounts of income. By applying F.I.T.A. to Guam, neither of the legislative purposes of the Act would be accomplished. On the contrary, the very purpose of the Act, i. e., to increase tax revenues, could be severely frustrated. For instance, if the Director's position was upheld then income tax on certain of the petitioner's U.S. sourced income would be paid to the Government of Guam and not to the United States. The Court does not believe that it was the intent of Congress to indirectly benefit Guam at the expense of the United States by the enactment of F.I.T.A.

Within Senate Report No. 2176, accompanying the 1958 amendments to Section 31 of the Organic Act of Guam, it is stated:

"The specific mention of chapter 2 and section 931 of the 1954 code and of corresponding provisions of the 1939 code from the income-tax laws in force in Guam is not intended to exclude other provisions of the 1954 or 1939 codes from the category of provisions which are manifestly inapplicable or incompatible with the intent of Congress in making the income-tax laws of the United States applicable in Guam. Other provisions of the 1954 and 1939 codes which are manifestly inapplicable or incompatible with that intent (for instance, section 932 of the 1954 code and section 252 of the 1939 code) are also excluded even though not specifically singled out for mention." (2 U.S.Code Cong. & Admin.News 1958 at p. 3649).

▮ In *Flores v. Gov. of Guam,* 444 F.2d 284 (1971), the U.S. Court of Appeals for the Ninth Circuit found this excerpt of legislative history to be the most authoritative source upon which to rely in determining the Congressional intent with regard to 48 U.S.C., Sec. 1421i(d)(1). It is, therefore, the holding of the Court that F.I.T.A. is not applicable to Guam in a manner to allow Guam to tax petitioner's income derived in the United States from the interest on said government obligations.

## INCOME IS NOT ATTRIBUTED TO PETITIONER'S GUAM OFFICE

Even if F.I.T.A. applied to petitioner's Guam operation, it is clear from regulations issued by the Internal Revenue Service that the income in question is not income which would be considered to be connected with petitioner's business in Guam. 26 C.F.R., Sec. 1.864–4(c)(5)(ii) and Sec. 1.864–4(c)(5)(iii).

26 C.F.R., Sec. 1.864–4(c)(5):

"(i) . . . .

(ii) . . . .

(iii) *Stocks or securities attributable to U.S. office*—(a) *In general.* For purposes of subdivision (ii) of this subparagraph, a stock or security shall be deemed to be attributable to a U.S. office only if—

(1) Such office actively participated in soliciting, negotiating, or performing other activities required to arrange, the acquisition of such stock or security, and

(2) Such stock or security is or was held in the United States by or for such office and recorded on its books or records as having been purchased or acquired by such office or for its account.

(b) *Exceptions.* A stock or security shall not be deemed to be attributable to a U.S. office merely because such office conducts one or more of the following activities:

(1) Collects or accounts for the dividends, interest, gain, or loss from such stock or security,

(2) Exercises general supervision over the activities of the persons directly responsible for carrying on the activities described in (a)(1) of this subdivision.

(3) Performs merely clerical functions incident to the acquisition of such stock or security, or

(4) Exercises final approval over the execution of the acquisition of such stock or security."

The only function which petitioner's office in Guam performs is to merely inform petitioner's California office of the amount of obligations that must be held to meet the requirements of Guam Government Code, Sec. 6313. Such a clerical function incident to the acquisition of the security in question is not sufficient to attribute the income derived from such security to petitioner's Guam office. 26 C.F.R., Sec. 1.864–4(c)(5)(iii)(b)(3).

## PETITIONER'S DEDUCTIONS IN TAX YEARS 1965–1966 SHOULD HAVE BEEN ALLOWED

The Director's contention that certain deductions claimed by petitioner in tax years 1965–1966 should not be allowed is without merit. The Director contended that a certain percentage of deductions claimed by petitioner's Guam office was attributable to income derived in the United States and not taxed by Guam.

However, it is obvious that the expenses allocated to income derived from the securities in question are incurred by petitioner's main office in California. Petitioner's Guam office incurs no expenses with regard to this income. If it were not required by statute that petitioner secure government deposits, the expenses incurred by petitioner's Guam office would have been exactly the same in 1965 and 1966 as was claimed.

It is, therefore, the opinion of the Court:

1. F.I.T.A. does not apply to petitioner's Guam operation.

2. Income derived from the securities in question cannot be attributed to petitioner's Guam office.

3. That the Director should not have included the income derived from said securities in 1967 and 1968, and should not have disallowed the percentage of deductions in 1965 and 1966.

Let Judgment Issue.